# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

MARY L. HOLLISTER,

      Petitioner,                     CASE NO. 06-CV-14202

*v.*                               DISTRICT JUDGE THOMAS L. LUDINGTON
                                      MAGISTRATE JUDGE CHARLES E. BINDER

SUSAN B. DAVIS,

      Respondent.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON PETITION FOR WRIT OF HABEAS CORPUS

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the Petition for Writ of

Habeas Corpus be **DENIED**.

## II.    REPORT

### A.    Introduction

Mary Hollister ("Petitioner"), who is presently confined at the Huron Valley Women's

Complex in Ypsilanti, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28

U.S.C. § 2254. In her *pro se* application, Petitioner challenges her conviction and sentence of nine

to twenty years on one count of solicitation of murder, MICH. COMP. LAWS § 750.157b(2). On

May 12, 2008, the case was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

§ 636(b). A response to the petition was filed on April 3, 2007. (Dkt. 5.) Accordingly, the case

is ready for Report and Recommendation.

## B.     Facts & Procedural History

Petitioner pleaded "no contest" to the charge of solicitation of murder on March 18, 2005, before Livingston County Circuit Judge David J. Reader.  (Plea Trans., Dkt. 6 at Ex. 3.)  The no contest plea was entered because of potential civil liability and lack of memory.  (*Id*. at 14.)  The factual basis for the plea was based on the state court's review of the exhibits attached to the plea form, including a police report that indicated that Petitioner offered Wayne Douglas Smith $5,000 as a "finder's fee" for him to locate someone that would execute Petitioner's husband.  The police report further stated that Petitioner had agreed to pay an additional $10,000 to the killer out of the life insurance proceeds she would receive once her husband was killed.  (*Id*. at 16.)  Petitioner, through counsel, moved to withdraw her plea on August 11, 2005; the motion was denied by Judge Reader.  (Mot. Hrng. Trans., Dkt. 6 at Ex. 5.)

Petitioner filed a delayed application for leave to appeal through appointed counsel on September 21, 2005.  (Delayed App., Dkt. 6 at Ex. 6.)  The application contended that: (1) the trial court erroneously denied Petitioner's motion to withdraw her plea; (2) it was clear error for the trial court to deny Petitioner's motion to withdraw her plea where the factual basis was insufficient to support a conviction for solicitation of murder; and (3) the trial court committed clear error in its factual findings or abused its discretion by improperly scoring Offense Variables ("OV") 4, 5, 6, 7, 9, and 10.  (*Id.* at 3.)  The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal based on "lack of merit in the grounds presented," *People v. Hollister,* No. 265298 (Mich. Ct. App. Oct. 27, 2005).  (*Id.* at 1.)  Petitioner applied for leave to appeal in the Michigan Supreme Court, re-asserting the three grounds presented to the court of appeals.  The court denied review.  *People v. Hollister*, No. 130144 (Mich. May 31, 2006).

In September 2006, Petitioner filed this *pro se* Petition for Writ of Habeas Corpus, which asserts the following claims:

I.      THE TRIAL COURT ERRONEOUSLY DENIED MS. HOLLISTER'S MOTION TO WITHDRAW HER GUILTY PLEA.

II.     IT WAS CLEAR ERROR FOR THE CIRCUIT COURT TO DENY DEFENDANT'S MOTION TO WITHDRAW HER PLEA WHERE FACTUAL BASIS IS INSUFFICIENT TO SUPPORT A CONVICTION FOR SOLICITATION OR MURDER.

III.    THE TRIAL COURT MISAPPLIED THE LAW IN SENTENCING, OR ALTERNATIVELY, MADE CLEAR ERROR IN ITS FACTUAL FINDINGS, OR ALTERNATIVELY ABUSED ITS DISCRETION AND COMMITTED HARMFUL ERROR BY IMPROPERLY SCORING OFFENSE VARIABLES 4, 5, 6, 7, 9, AND 10.

(Pet., Dkt. 1 at 2.)

**C.      Law and Analysis**

**1.      Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed her habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997).

The AEDPA altered the standard of review that a federal court must use when reviewing applications for the writ of habeas corpus. *Felker v. Turpin*, 518 U.S. 651, 116 S. Ct. 2333, 2335, 135 L. Ed. 2d 827 (1996), *reh'g denied,* 518 U.S. 1047, 117 S. Ct. 25, 135 L. Ed. 2d 1119 (1996); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112, 118 S. Ct. 1044, 140 L. Ed. 2d 109 (1998).  The current standard of review provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that

was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), the Court held that a state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Id.* at 1519. Additionally, a state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 1520. The reasonableness of the state court's opinion is judged by an objective rather than subjective standard. *See id.* at 1521-22. The state court decision, however, need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam).

Pursuant to the AEDPA, this Court must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear

and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998); *see also* 28 U.S.C. § 2254(e)(1).

### 2.    Motion to Withdraw Plea

Petitioner asserts that the trial court erroneously denied her motion to withdraw her no contest plea because the "affidavits presented in conjunction with [her] Motion to Withdraw Plea demonstrate that the no contest plea was not knowing" based on her "use of multiple medications." (Dkt. 1 at 4-5.)

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 162 L. Ed. 2d 143 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)).  "A state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and convincing evidence." *Wright v. Lafler*, 247 Fed. App'x 701, 705 (6th Cir. 2007).

The state court, in denying the motion to withdraw Petitioner's plea, noted that the plea-taking "proceedings were slow in that the court wanted to take time to make sure that things were reviewed with Ms. Hollister[,] . . . appropriate rights were given, []they were understood and reviewed by Ms. Hollister . . . [and t]here was a factual basis for the plea as supported by the police report." (Mot. Hrng. Trans., Dkt. 6, Ex. 5 at 7.)  At the plea-taking hearing, Petitioner mentioned that she had dyslexia but her attorney indicated he went over the waiver and plea forms several times in the two weeks preceding the hearing.  (Dkt. 6, Ex. 3 at 5.)  The state court judge required Petitioner to describe the charge to which she was pleading no contest, went over the possibility that her probation for a previous stalking conviction could be violated as a result of the plea, asked

Petitioner to describe the maximum and minimum possible sentences, which she described accurately, and specifically went over each of the rights associated with a jury trial that Petitioner was giving up by pleading no contest. (*Id.* at 5-12.)

In addition, the state court asked Petitioner whether she was under the influence of any alcohol or controlled substance and she responded, "No, sir." (*Id.* at 5.) Petitioner also indicated that no one forced her to sign the waiver of jury trial form, nor did anyone promise her anything in exchange for her signature. (*Id.* at 9-10.) Petitioner was sufficiently aware of the rights being waived that she expressed that she was previously unaware of the fact that the court would compel witnesses to appear at trial until that day. (*Id.* at 10-11.) The state court inquired and Petitioner was able to accurately describe the plea agreement herself. (*Id.* at 11-12.) Petitioner also acknowledged that she was not promised leniency and that no one forced or threatened her to enter the no contest plea. (*Id.* at 12.) Petitioner was able to express herself when she did not understand, i.e., when asked whether she "reviewed" her "constitutional rights" with her attorney, she responded that she did not know what they were. (*Id.* at 13.) Then after speaking with her attorney for a moment, she stated, "Oh, that's the trial. Okay." (*Id.*) Her attorney indicated that she had not "understood the linkage between the various rights and the word constitutional." (*Id.*) When the court reiterated the question, she responded that she did understand. (*Id.*)

Petitioner then agreed that it was in her best interest to plead "guilty by way of no contest" and that it was her own choice to do so. (*Id.* at 13-14.) Petitioner also agreed that she was aware that she could only appeal the conviction and sentence by filing an application for leave rather than by right and that she would not be entitled to an attorney appointed at public expense to assist her. (*Id.* at 14-15.) Petitioner also stated that she understood that if the court accepted her plea, she

would be giving up the right to claim that the plea was the result of promises or threats or that it was her own choice to plead no contest. (*Id.* at 15.)

In reference to potential bond and sentencing, Petitioner's counsel indicated there had been two forensic exams conducted on Petitioner that he would be submitting to the court and the court indicated there would be a full inquiry into all relevant issues, including mental health, in the probation department's pre-sentence investigation. (*Id*. at 20-21.)

After reviewing the record, I suggest that there is no evidence that Petitioner was incompetent or otherwise unaware of the consequences of her providing a no contest plea. To the contrary, she was comfortable enough to ask the court to clarify the one question she did not understand and she was able to describe the charge and potential maximum and minimum sentence she could receive by pleading no contest. The state court "engaged in a full plea colloquy," and Petitioner's own repeated statements that she understood the various, clear, and individualized consequences of her plea "provide strong evidence that [her] plea was intelligent and knowing." *Boyd v. Yukins*, 98 Fed. App'x 699, 703 (6th Cir. 2004).

In the instant case, Petitioner does not describe where her subjective impression differs from that stated on the record. Even if she had, "courts are generally wary of a defendant's *post hoc* claims that she or he subjectively believed the plea agreement to be different . . . [because] [i]f we were to rely on [Petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless . . . .'" *Id.* (quoting *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999)).

Petitioner's "evidence of past psychiatric problems and [her] self-serving, after-the-fact testimony that [she] had used [multiple medications] before entering [her] plea . . . do not constitute clear and convincing evidence necessary to rebut the state trial court's finding that [she]

entered [her] guilty plea voluntarily, intelligently, and knowingly." *Stewart v. Morgan*, 232 Fed. App'x 482, 491 (6th Cir. 2007) (involving marijuana use rather than "multiple medications"). I therefore suggest that this ground does not support federal habeas relief.

### 3. Insufficient Evidence to Support Plea

When a habeas petitioner raises a claim that the evidence upon which he or she was convicted was insufficient, the United States Supreme Court case of *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979), provides the applicable federal law. In *Jackson*, the Court held that the U.S. Constitution prohibits criminal convictions except upon proof of guilt beyond a reasonable doubt. *Id.* at 309 (citing *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). A reviewing court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citing *Woodby v. INS*, 385 U.S. 276, 282, 87 S. Ct. 483, 17 L. Ed. 2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The Sixth Circuit has recognized that "[t]he standard for evaluating claims that a conviction is not supported by sufficient evidence presents a very difficult hurdle for the criminal appellant. . . ." *United States v. Maxwell*, 160 F.3d 1071, 1077 (6th Cir. 1998).

Petitioner's sole ground for her claim that the proofs upon which the trial judge relied were "insufficient as a matter of law, is that the facts relied upon did not prove the imminence element" of a solicitation of murder conviction. (Dkt. 1 at 6.) Although an earlier version of MICH. COMP. LAWS § 750.157b(2), which used the words, "incites, induces or exhorts" was interpreted as establishing a required element of "imminence," *People v. Salazar*, 140 Mich. App. 137, 144-45, 362 N.W.2d 913 (1985), Petitioner was convicted under the current version, amended in 1986.

Under the current statute, "[a] person who solicits another person to commit murder, or who solicits another person to do or omit to do an act which if completed would constitute murder, is guilty of a felony punishable by imprisonment for life or any term of years." MICH. COMP. LAWS § 750.157b(2). The word "solicit" means "to offer to give, promise to give, or give any money, services, or anything of value, or to forgive or promise to forgive a debt or obligation." MICH. COMP. LAWS § 750.157b(1). "As is clear from the current version of the statute, the Legislature removed the words 'incites, induces or exhorts' from the crime." *People v. Sexton*, 250 Mich. App. 211, 226, 646 N.W.2d 875 (2002). Therefore, "the prosecutor was not required to present evidence of imminence." *Id.* at 227.

Accordingly, I suggest that Petitioner cannot even establish a violation of state law, let alone federal law, with respect to the factual basis for her plea. I further suggest that the factual basis gleaned from the police report was sufficient to show that Petitioner did offer to give money to another person to commit murder as prohibited by MICH. COMP. LAWS § 750.157b. Thus, I suggest that federal habeas relief be denied on this ground as well.

**4**. **Sentencing Issues**

Petitioner argues that offense variables 4, 5, 6, 7, 9, and 10 were wrongfully scored resulting in a sentence that was based on error. (Dkt. 1 at 7.) A federal court may only review a state prisoner's habeas petition on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984). Therefore, "a claim that the trial court violated state law when sentencing a prisoner is not cognizable in a habeas corpus proceeding." *Terry v. Trippett*, No. 94-2077, 1995 WL 469424, *1 (6th Cir. Aug. 7, 1995) (citing *Branan v. Booth*, 861

F.2d 1507, 1508 (11th Cir. 1988) (*per curiam*)).  Furthermore, "the Eighth Amendment contains no [strict] proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991).[1]

I suggest that Petitioner's claim that offense variables were wrongfully scored alleges a mere failure of the state court to properly apply state sentencing guidelines, which cannot be remedied in a federal habeas proceeding.

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

 s/ 𝓒harles 𝓔 𝓑inder

CHARLES E. BINDER
Dated: May 27, 2008                    United States Magistrate Judge

_____

[1]The modifier "strict" is added because although Justices Rehnquist and Scalia would have held that there is no proportionality guarantee, Justices White, Marshall, Blackmun, and Stevens believed there is a strong proportionality requirement.  Justice Kennedy's concurrence, joined by Justices O'Connor and Souter concluded that the application of a "narrow proportionality principle" was called for.  Thus, five justices agreed there is no requirement of strict proportionality.  *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991).

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Brian O. Neill, served on Mary Hollister by first class mail, and served on District Judge Ludington in the traditional manner.

Date:  May 27, 2008                    By_____s/Patricia T. Morris_____
                                                Law Clerk to Magistrate Judge Binder